UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ESTATE OF JAMES SWAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:07-CV-69 JVB |
| | ) | |
| WESTFIELD INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) ) | |

**REPORT AND RECOMMENDATION**

On December 28, 2007, Plaintiff, Estate of James Swan ("James Swan"), filed a motion for summary judgment. On February 29, 2008, Defendant, Westfield Insurance Co. ("Westfield") filed a cross motion for summary judgment. On March 14, 2008, James Swan filed both a response and a reply to Westfield's filing. On March 28, 2008, Westfield filed a reply. On April 3, 2008, James Swan filed a Fed. R. Civ. P. 56 motion to strike portions of Westfield's reply brief.

On June 12, 2008, this case was referred to the undersigned to enter a report and recommendation on the aforementioned motions. The following Report and Recommendation is based upon the record of this case that includes the pleadings, the motions, the briefs of the parties, and the arguments of counsel. This Court may enter a report and recommendation in this matter based on its referral order, 28 U.S.C. § 636(b)(1)(B), and 42 U.S.C. § 405(g).

**I.   PRELIMINARY MATTERS**

   A.   Choice of Law

"A federal court sitting in diversity jurisdiction must apply the substantive law of the

1

state in which it sits," which includes the state's conflict rules. Land v. Yamaha Motor Corp., 272 F.3d 514, 516 (7th Cir. 2007); Carolina Cas. Ins. Co. v. Estate of Zinsmaster, 2007 WL 3232461 at *2 (N.D. Ind. 2007). Both parties have indicated, in their briefs, that Indiana law applies to this contract dispute.

  B. Ancillary Motions

On April 3, 2008, James Swan filed a Fed. R. Civ. P. 56 motion to strike portions of Westfield's reply brief because he argues that Westfield raised new arguments. However, because this Court does not consider additional arguments, this Court **RECOMMENDS** that James Swan's motion be **DENIED AS MOOT**. [Doc. No. 56].

In addition, on April 3, 2008, James Swan filed a Fed. R. Civ. P. 12(f) motion to strike the Affidavit of Kari Johnson because he contends that the affidavit is not based on personal knowledge. However, because the basic facts in this case are uncontested and because the affidavit is only relevant as to whether James Swan was a "residence employee," and issue left unaddressed in this Court report and recommendation, this Court **DENIES** James Swans's Rule 12(f) motion to strike. [Doc. No. 55].

Finally, on May 23, 2004, James Swan filed an objection to Westfield's supplemental authority, arguing that Westfield was "attempting to backdoor a surreply" to his motion for summary judgment. However, because this Court did not rely on Westfield's supplemental authority in crafting its report and recommendation, this Court **DENIES AS MOOT** James Swan's objection. [Doc. No. 66].

**II. ANALYSIS**

  A. Facts

The facts in this case are primarily uncontested. Until 1997, River Junction Farm (the "farm") was a fully operational dairy and crop farm owned by John and Kathy Swan. See Doc. No. 49-2. After the farm began phasing out is full time farming operations, John Swan engaged in a small, relatively informal, welding business on farm property. Id.

James Swan, John and Kathy Swan's son, spent his childhood on the farm and performed various chores at the request of his parents, including baling hay and mowing fields. Id. Between 1999-2005, James Swan resided on farm property, at a house that he purchased from his grandmother. Id. James Swan was employed by his father to assist with the welding business. Id.

On January 30, 2005, Westfield issued a farm liability insurance policy ("insurance contract" or "contract") to John Swan d/b/a River Junction Farm. See Doc. No. 50 at 5; see also Docs. Nos. 42-2 and 42-3. On September 10, 2005, during the insurance contract's policy period, James Swan died in an airplane crash, while he was a passenger in an aircraft owned and operated by his father. See Doc. No. 50 at 1.

B.  Standard of Review

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Lawson v. CSX Transp., Inc., 245 F.3d 916, 922 (7th Cir. 2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party as well to draw all reasonable and justifiable inferences in favor of that party. Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986); King v. Preferred Technical Group, 166 F.3d 887, 890 (7th Cir. 1999). To overcome a motion for

summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the non-moving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Bank of Ariz. v. Cities Services Co., 391 U.S. 253, 289 (1968)).

C. Summary Judgment Motions

James, through his estate, argues that the construction and language of the insurance contract provides coverage for his death, entitling his estate to payment of benefits under the insurance contract. Westfield argues that the contract does not provide coverage to third parties such as James, absent a finding of liability against the insured party, John Swan.

In Indiana, the interpretation and construction of contract provisions is a function for the courts. Klitz v. Klitz, 708 N.E.2d 600, 602 (Ind. Ct. App. 1999). In interpreting an unambiguous contract, a court gives effect to the parties' intentions as expressed in the four corners of the document. Noble Roman's, Inc. v. Pizza Boxes, Inc., 835 N.E.2d 1094, 1098 (Ind. Ct. App. 2005). Unless the terms of a contract are ambiguous, they will be given their plain and ordinary meaning. Id. Whether a contract is ambiguous is a question of law. W. Ohio Pizza, Inc. v. Clark Oil & Refining Corp., 704 N.E.2d 1086, 1091 (Ind. Ct. App. 1999). Where the terms of a contract are clear and unambiguous, they are conclusive and a court will not construe the contract or consider extrinsic evidence. Eckart v. Davis, 631 N.E.2d 494, 497 (Ind. Ct. App. 1994). A contract is not ambiguous merely because the parties disagree about the proper

interpretation of its terms. Arrotin Plastic Materials of Ind. v. Wilmington Paper Corp., 865 N.E.2d 1039, 1041 (Ind. Ct. App. 2007). In fact, a contract is only ambiguous where a reasonable person could find that its terms are susceptible to more than one interpretation. Id. If a contract is uncertain and its meaning is to be determined by extrinsic evidence, its construction is for the finder of fact. Schoemer v. Hanes & Assoc.s, Inc., 693 N.E.2d 1333, 1338-39 (Ind. Ct. App. 1998).

1. This Court Has Subject Matter Jurisdiction to Hear James Swan's Claims

Westfield argues that, because James Swan is a third party, he is not permitted to sue Westfield directly. Instead, Westfield argues that James Swan must first sue the Estate of John Swan ("John Swan") before he can collect from Westfield. As such, Westfield argues that the nominal party, the Estate of John Swan, would become a necessary party to this action, thereby destroying diversity jurisdiction because both James Swan and John Swan are considered to reside in Indiana. Intec USA, LLC v. Engle, 467 F.3d 1038, 1041 (7th Cir. 2006) (The "diversity" requirement requires "complete diversity," which prohibits any citizen of the same state from appearing on "both sides" of a case.).

Westfield is correct that Indiana law does not permit direct actions against insurance companies by third party beneficiaries on tort claims. Donald v. Liberty Mutual Ins. Co., 18 F.3d 474, 479-481 (7th Cir. 1994). Further, Indiana law does not permit James Swan to bring a direct action against Westfield on his tort action of bad faith dealing. See Cain v. Griffin, 849 N.E.2d 507, 514 (Ind. 2006) ("a third-party beneficiary cannot sue an insurer in a tort action for the insurer's failure to deal in good faith with a third-party beneficiary."). As such, Count III of James' Swan's complaint, seeking relief under a breach of fair dealing, is not viable under Indiana law.

However, Indiana law does permit direct actions against insurance companies by third party beneficiaries on contract claims. Donald, 18 F.3d at 479-481. To the extent that James Swan is seeking to enforce third-party contract coverage, he may bring his contractual claim directly against Westfield. Id. Consequently, as to James Swan's third-party contract claim, the Estate of John Swan is correctly characterized as a nominal defendant, harmless to the establishment of diversity jurisdiction in this case. Matchett v. Wold, 818 F.2d 574, 576 (7th Cir. 1986) (The addition of a purely nominal party does not automatically deprive a federal court of subject matter jurisdiction). See also Farias v. Bexar County Board of Trustees, 925 F.2d 866, 871 (5th Cir. 1991) (A "nominal party" is one that is "neither necessary nor indispensable to join in the action."). Accordingly, this Court limits its review to James' Swan's third-party contract claim.

2. The Contract Does Not Bestow Direct Third Party Rights

Simply because James Swan argues that the contract provides third party rights, does not necessarily make it so. Instead, the Indiana Supreme Court makes apparent that, in order to enforce third party contractual benefits, "it must clearly appear that it was the purpose or a purpose of the contract to impose an obligation on one of the contracting parties in favor of the third party." Cain v. Griffin, 849 N.E.2d 507, 514 (Ind. 2006).

Westfield argues that the contract only provides rights to third parties under narrow circumstances and contends that Westfield only becomes contractually liable to pay those benefits after liability has first been established against the insured, John Swan. James Swan argues that the contract provides third party coverage independent of a prior showing of liability. If Westfield is correct, James Swan's claim would be deficient because he failed to bring a timely action against the insured James Swan. If James Swan is correct, Westfield would be

6

obligated to pay insurance benefits, and trial would be necessary to establish their amount. This Court believes that Westfield is correct.

The contract language that is relevant to the immediate motions is stated below.

a. We will pay those sums that the "insured" becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
. . .
No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under the ADDITIONAL COVERAGES.

b. This insurance applies to "bodily injury" and "property damage" only if: (1) The "bodily injury" or "property damage" is caused by an "occurrence;" and (2) The "bodily injury" or "property damage" occurs during the policy period.

See Doc. No. 42-2 (Sections IH1(a) and IH1(b)).

James Swan contends that the contract provides third party contractual rights in two ways. However, as articulated below, this Court concludes that neither of the provisions establish direct third party coverage which would permit James Swan to sue for enforcement directly against Westfield.

First, James Swan argues that section IH1b provides separate and independent coverage from IH1a. In support, James Swan spends a great deal of time and effort arguing that such a conclusion is easily found under grammar principles of coordination and subordination. In particular, James Swan argues that because both section IH1a and IH1b share the same, "coordinate," logistical position in the contractual "outline," and because the sections are not joined by an "and," that each section should be read to provide independent grounds for coverage. However, considering the contract as a whole, James Swan's reasoning is nonsensical and contrary to the clearly articulated coverages in the contract. See Briles v. Wausau Ins. Cos.,

7

858 N.E.2d 208, 213 (Ind. App. 2006) (Courts must accept interpretation of policy that harmonizes its provisions rather than one that supports conflicting versions of its provisions). See also Am. Family Ins. Co. v. Globe Am. Cas. Co., 774 N.E.2d 932, 935 (Ind. App. 2002) ("the power to interpret contracts does not extend to changing their terms, and we will not give insurance policies an unreasonable construction to provide added coverage").

To begin, section IH1a clearly establishes the limits of coverage under the insurance contract. For example, the opening sentence of the section lays out when coverage applies. It states, "[w]e will pay those sums that the 'insured' becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." See Doc. No. 42-2. Further, the last line of the section states, "No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under the ADDITIONAL COVERAGES." Id.

It is the law that ambiguous contract provisions should be construed liberally in favor of the insured. Miller v. Dilts, 463 N.E.2d 257 (Ind. 1984); Nat'l Mut. Ins. Co. v. Eward, 517 N.E.2d 95, 100 (Ind. App. 1987). However, where the contract language is not ambiguous, the Court is to give the language its plain meaning. Tate v. Secura Ins., 587 N.E.2d 665, 668 (Ind. 1992). In addition, to be enforceable, that third party contract provisions must be clearly articulated in the language of the contract. See Donald, 18. F.3d at 481 ("A third party beneficiary contract requires first, that the intent to benefit the third party be clear . . ."). It is hard to imagine a more clearly worded limitation on coverage than that stated above.

Further, if this Court were to follow James Swan's argument to its logical conclusion, sections IH1c and IH1d would also be read to provide independent coverage under the contract. This Court can not conclude that language such as, "Damages because of 'bodily injury' include

damages claimed by any person or organization for care, loss of services, or death resulting at any time from the 'bodily injury'" or "'Property damage' that is loss of use of tangible property that is not physically injured will be deemed to occur at the time of the 'occurrence' that caused it" can be construed as creating independent third party contractual coverage. These clauses describe and limit damages. They do not create causes of action for third parties.

Finally, it is hard to see how the parties could have intended section IH1b to provide independent coverage. See Nat'l Mut. Ins. Co., 517 N.E.2d at 100 ("[W]hen construing an insurance contract, the court must seek to determine the intent of the parties to the contract."). In particular, it strains the imagination that the parties could have intended the seemingly limitless coverage that section IH1b would create, when read independently from section IH1a. Indeed, assuming James Swan's interpretation is correct, that section IH1b was intended to provide a separate means of coverage from section IH1a, foreseeably any person who suffered a bodily injury anywhere in the world during the relevant time period would qualify for coverage under the contract, as the language of the section provides no other limitation on "coverage" besides occurrence of a bodily injury during the policy period. See Doc. No. 42-2. Because the contract can not reasonably be interpreted to include such impossible results, this Court does not agree with James Swans' argument.

To avoid the strained interpretation and absurd results that the parties could not have reasonably intended, this Court concludes that the whole of IH1 must be read as an integrated section. As such, this Court agrees with Westfield that the section limits payment of benefits to third parties to situations in which liability has first been established against the named insured, John Swan. Accordingly, James Swan's claim is deficient because he did not first seek to

9

establish liability against the Estate of John Swan but proceeded instead to enforce the contract directly against Westfield.

James Swan's second argument that the contract provides direct third- party coverage is similarly unavailing. James Swan argues that the contract additionally provides third-party coverage for "residence employees," a category that he says bests describes his situation. While there is a genuine factual dispute whether James Swan actually meets the definition of a residence employee, even assuming that he was properly characterized as such, James Swan can not establish that the contract clearly intends to provide direct, third-party coverage for such employees. See Doc. No. 42-3 (contractual definition of "residence employee").

James Swan's argument depends on a "strained" reading of the contract in which he argues that an exception for residence employees to an exclusion from coverage for persons injured in airplanes creates third party coverage. In particular, James Swan cites to the language, "[t]his Exclusion [from coverage for bodily injury or property damage relating to aircraft] does not apply to: An aircraft that causes 'bodily injury' or 'property damage' to a 'residence employee' who is not operating or maintaining it." Id. (internal citations omitted).

It is well settled in Indiana that an exception to an exclusion does not create coverage. Indiana Ins. Co. v. DeZutti, 408 N.E.2d 1275, 1278 (Ind. 1980); Amerisure, Inc. v. Wurster Constr. Co., Inc., 818 N.E.2d 998, 1005 (Ind. App. 2004). Further, as stated above, the law is clear that the intent of the parties to provide third-party contract rights must be clearly stated in the contract. See Donald, 18. F.3d at 481 ("A third party beneficiary contract requires first, that the intent to benefit the third party be clear . . ."). Accordingly, absent some authority to the contrary, this Court can not reasonably conclude that the parties intended to create affirmative third-party rights to the contract through this narrow exception to an exclusion from coverage.

Further, even assuming that the provision created third party rights, James Swan has not articulated how such rights would not be subject to section IH1a's requirement to first establish liability against the insured party, John Swan. That is, James Swan still can not establish that the third party rights, which he claims are created under the exception, are "direct" rights, permitting James Swan to seek payment of insurance proceeds directly against Westfield.

### III. CONCLUSION

The events leading to James Swan's death were tragic. However, tragic circumstances do not permit this Court to write-in contract provisions that are not articulated in the document nor intended by its drafters. Because this Court finds that the contractual language does not provide for direct third-party contractual rights, this Court concludes that James's Swan's claims are not viable as raised. As such, this Court recommends that James Swan's Motion for Summary Judgment be **DENIED**. [Doc. No. 40]. Further, this Court recommends that Westfield's motion for summary judgment be **GRANTED**. [Doc. No. 49]. In addition, this Court recommends that James Swan's Rule 56 motion to strike motion be **DENIED AS MOOT**. [Doc. No. 56]. Finally, this Court **DENIES** James Swans's Rule 12(f) motion to strike, [Doc. No. 55]; and **DENIES AS MOOT** James Swan's objection. [Doc. No. 66].

> **NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER**

**SO ORDERED**.

Dated this 5th Day of December, 2008.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge